### In re OXFORD ROYAL MUSHROOM PRODUCTS, INC., Debtor.

### Bankruptcy No. 81–02434G.

United States Bankruptcy Court,
E. D. Pennsylvania.

May 13, 1982.

W. T. Windsor, Jr., Saul, Ewing, Remick & Saul, Philadelphia, Pa., for debtor, Oxford Royal Mushroom Products, Inc.

Robert H. Levin, Adelman & Lavine, Philadelphia, Pa., for Southeast Nat. Bank of Pa.

Lawrence J. Lichtenstein, Allen B. Dubroff, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for Official Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The instant case is before us on the debtor's second application for an order authorizing the use of cash collateral. We will deny the application because we find that the debtor is precluded from using the cash collateral because of our previous order prohibiting such use. This order was entered pursuant to the terms of a stipulation between the debtor and the bank which holds a security interest in that cash collateral.

The relevant facts of this case are briefly:[1] On June 25, 1981, Oxford Royal Mushroom Products, Inc. ("the debtor") filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). On that same day, the debtor filed an application for an order authorizing the use of cash collateral. Southeast National Bank of Pennsylvania ("the bank") asserted that it had a valid security interest in the debtor's cash collateral and demanded that it be given adequate protection of that interest. After several hearings, the debtor and the bank finally entered into a stipulation

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

whereby the debtor was granted permission to use the cash collateral under certain specified terms and conditions. On July 30, 1981, we entered an order approving that stipulation. Thereafter, in October, 1981, the debtor and the bank agreed to an extension of the stipulation for the use of the cash collateral to March 27, 1982 and on November 20, 1981, we entered an order approving that extension.

On March 23, 1982, the bank filed an application for an order terminating the use of the cash collateral based on alleged breaches by the debtor of the terms of the stipulation. At the hearing held thereon, the debtor admitted that it had breached various terms of the stipulation and its extension but raised various defenses.[2] We rejected the debtor's arguments and found that, by the terms of the stipulation and its extension, the bank was entitled to an order terminating the debtor's use of the cash collateral.[3] We thereupon entered an order on April 1, 1982, stating that "the authority previously granted to the debtor in possession to use the cash collateral be and hereby is terminated, said termination to be effective immediately." After an expedited appeal by the debtor, Judge E. Mac Troutman, of the United States District Court for the Eastern District of Pennsylvania, dismissed the appeal and affirmed our terminating order of April 1, 1982.[4]

In the interim the debtor had filed a second application for the use of cash collat-

eral. The bank filed an answer asserting that, because of the stipulation and our order of April 1, 1982, the debtor is not entitled to the use of the cash collateral. The debtor countered that the stipulation and our order merely precluded the debtor from using the cash collateral under § 363(c)(2)(A) (that is, with the consent of the bank) but did not bar the debtor from getting authorization from the court for the use of cash collateral pursuant to § 363(c)(2)(B).[5]

We disagree. Paragraph 9 of the extension of the stipulation provides that upon default and proof thereof to the court, "the parties agree that the court shall enter an order terminating further use of cash collateral."[6] We conclude that the proper interpretation of that clause is that the debtor is precluded from using the cash collateral under any circumstances. It does not mean that the debtor has simply lost the ability to use the cash collateral with the consent of the bank, as provided by § 363(c)(2)(A), but it also means that the debtor has likewise lost the right to seek authority from the court for the use of cash collateral pursuant to § 363(c)(2)(B). We will therefore deny the debtor's second application for the use of cash collateral.

---

**2.** The debtor's first defense was that the bank had waived its right to seek an order terminating the right to use the cash collateral because it had been aware of the debtor's defaults for over a month. We rejected that argument finding that the bank's delay in seeking an order of this court was not a waiver of its rights but was merely an attempt to resolve the problems with the debtor without the necessity of intervention by the court. The debtor's second argument was the same as that raised in the instant application and was rejected at that time for the same reasons we reject it in this opinion.

**3.** Paragraph 9 of the Stipulation and the Extension to the Stipulation states, in part, that "Upon the occurrence of any of the foregoing events specified in (a) through (g), inclusive, and upon application to the Court, and proof thereof, the parties agree that the Court shall

enter an order terminating further use of cash collateral." The debtor admitted that defaults had occurred pursuant to both (a) and (d) of ¶ 9.

**4.** *See Appeal of Oxford Royal Mushroom Products, Inc.*, Civil Action No. 82–1862 (order of Judge Troutman) (E.D.Pa. May 7, 1982).

**5.** Section 363(c)(2)(A) and (B) provides:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

**6.** *See* note 3, *supra.*